[No. 588-1.    Division One—Panel 1.    December 20, 1971.]

EDWIN M. DOUGHERTY *et al., Respondents,* v. QUALITY PACIFIC HOMES, INC., *et al., Appellants.*

---

*Bogle, Gates, Dobrin, Wakefield & Long, Don Paul Badgley,* and *Dale B. Ramerman,* for appellants.

*J. Lael Simmons,* for respondent.

UTTER, J.—Edwin and Velva Dougherty brought suit claiming a carport, owned by defendants Beckwith, was built in violation of a restrictive covenant which required various structures to be set back 20 feet from the front line of property subject to the covenant.

The trial court identified the southwest boundary of defendants' property as the front property line and issued a mandatory injunction requiring defendants' carport to be set back 20 feet from that line. The defendants appeal.

We hold the trial court erred in its determination of the location of the front property line, and appellants are not in violation of the restrictive covenant. This disposition makes it unnecessary to discuss the other assignments of error.

The property at issue is located in the Eastgate Addition, Division F in King County. (See diagram on p. 66.) The Dougherty home is located on lot 10 which adjoins and is northeast of lot 11. Lot 4 lies to the southeast of lot 11. Access to lots 9, 10, and 11 is by means of an easement along the northeast side of lot 4. There is no access to lot 11 from the Newport-Issaquah Road due to the steepness of the terrain. The house and carport which are at issue were built by appellant Quality Pacific Homes and subsequently purchased by the appellants Beckwith.

Lot 11 slopes to such a degree that J. R. Cooper, superintendent and vice-president of Quality Pacific Homes, decided to place the house nearer than planned to the corner of the lot to avoid the slope. The house was built in its new location and the carport was attached to the southeast side of the house 7.6 feet from the common boundary line between lots 11 and 4. Respondents contend this boundary between lots 11 and 4 is a front lot line and the carport

violates paragraph C of a restrictive covenant which requires that "no building shall be located on any residential lot nearer than 20 feet to the front lot line."

The trial court, in finding for respondents, reasoned that the property line next to the Newport-Issaquah Road was either the front line or the back line of the property. The court concluded the builder's placement of the house within 10 feet of the northeast line between lots 10 and 11 indicated an intention to regard that line as a side property line. The court then concluded that since there is no possibility of access to the lot from the Newport-Issaquah Road and since the house faces in the opposite direction, the Newport-Issaquah Road property line must be the back line and, of necessity, the line between lots 4 and 11 must be the front line. This conclusion, the court noted, would cause lot 11 to conform to the other lots served by the easement.

■ Generally, when no corner lot is involved, the front

lot line is that line which abuts the street or way of access. King County Code 24.04.395 (April 29, 1963)[1]; 2 R. Anderson, American Law of Zoning § 12.11 (1968); *Marblehead v. Deery*, 356 Mass. 532, 254 N.E.2d 234 (1969).

A lot may in some instances front on water instead of a road, but usually not on another piece of land. *Proctor v. Maine Cent. R.R.*, 96 Me. 458, 52 A. 933 (1902). A front lot line need not extend across the width of the property in all instances. *Baltimore v. Princeton Constr. Co.*, 229 Md. 176, 182 A.2d 803 (1962). In some instances, the front lot line may be no more than the end line of a dead end street which abuts the property and is the only means of access. *J. L. Hennessy Assoc., Inc. v. Griffin*, 155 N.Y.S.2d 378 (1956).

In the instant case, the line chosen by the trial court as the front lot line has no relation to any way of access to the property and serves only to divide one lot from another. The only property line related to a way of access is the line between lots 10 and 11. However, only part of this line serves access to the property or divides the property from the street—the rest divides lot from lot.

Lot 11 is in a position analogous to a lot on a cul-de-sac. Its property lines serve to separate the lot from other lots and no property line, in its full length, serves any function normally associated with a front property line. The way of access is the reference point from which the location of the front lot line must be deduced. We see no material significance in whether the way of access is a public street or an easement shared by all occupants of an area, as in the present case.

---

[1] "(a) LOT FRONT LINE. 'Lot front line' means, in the case of an *interior lot,* a line separating the *lot* from the *street;* in the case of a *corner lot* and *reverse corner lot,* the *lot front line* shall be the line separating the narrowest *street* frontage of the *lot* from the *street.* In case of *corner lots* or *reverse corner lots* having equal *street* frontages, that property line the prolongation of which creates the front property line for the greatest number of *interior lots* in the same *block* shall be considered as the *lot front line* of such *corner or reverse corner lot.*"

Under the facts of this case, the law compels the conclusion that the front property line of lot 11 is that 20-foot portion of the northeast property line that is formed by lot 11 and the end line of the access easement. When this interpretation is followed, there is no violation of the restrictive covenant.

The judgment is reversed.

HOROWITZ, C.J., and WILLIAMS, J., concur.